UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RAYMOND BELLAVANCE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:18-cv-00266-DBH |
| | ) | |
| RANDALL LIBERTY, | ) | |
| Warden, Maine State Prison, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

In this action, Petitioner Raymond Bellavance, Jr., seeks relief pursuant to
28 U.S.C. § 2254. (Petition, ECF No. 1.) Petitioner contests the Maine Law Court's
decision to deny discretionary review following the post-conviction court's denial of
Petitioner's claim that the trial court violated his Sixth Amendment right to counsel in
connection with the testimony of a potential defense witness, whom the State called to
testify at trial. In addition, Petitioner asserts claims based on the state court's denial of his
post-conviction claims under *Strickland v. Washington*, 466 U.S. 668 (1984),
for ineffective assistance of trial and appellate counsel. (Petition at 7-8.)[1]

After a review of the section 2254 petition, the State's request for dismissal, and the
record, I recommend the Court grant the State's request, and dismiss the petition.

---

[1] This Court's ECF pagination of Petitioner's 28 U.S.C. § 2254 petition is used here; it differs from the
pagination on Petitioner's printed section 2254 petition.

# I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial in December 2011, Petitioner was convicted of one count of arson (Class A), 17-A M.R.S. § 802(1)(A) or (1)(B)(2), based on an incident that occurred in June 2009. *State v. Bellavance*, 2013 ME 42, ¶ 1, 18, 65 A.3d 1235. (*State v. Bellavance*, No. AUGSC-CR-2010-00230, Judgments and Commitments.)[2] Petitioner appealed from the conviction, and he requested leave to appeal from the sentence. *Bellavance*, 2013 ME 42, ¶ 18 & n.2. The Sentence Review Panel denied Petitioner's application for leave to appeal from the sentence. *Id.* ¶ 18 n.2.

In his appeal from the conviction, Petitioner argued "that the court effectively deprived him of his right to counsel when it permitted the testimony of an anticipated defense witness who decided, mid-trial, to testify for the prosecution in exchange for a promise of immunity." *Id.* ¶ 1. The Law Court determined that the prosecution did not violate Rule 16 of the Maine Rules of Criminal Procedure in the efforts to obtain the testimony; that "the court provided [Petitioner] with adequate opportunity to prepare for [the] changed testimony;" and that Petitioner did not "establish[] that he suffered sufficient prejudice to show that the court abused its discretion by not permitting him additional time to prepare for [the] testimony." *Id.* ¶¶ 26-28. The Law Court concluded Petitioner's "Sixth

---

[2] The state court record (ECF No. 6, filed in paper form) contains a judgment and commitment for the 17-A M.R.S. § 802(1)(A) offense, and a separate judgment and commitment for the 17-A M.R.S. § 802(1)(B)(2) offense. (*State v. Bellavance*, No. AUGSC-CR-2010-00230, Judgments and Commitments.) The judgment and commitment for the section 802(1)(A) offense provides that Petitioner was found guilty of both counts, but that the court imposed the sentence as to only one count. "To avoid violating [Petitioner's] double jeopardy rights, the court merged the two separate counts of arson and ordered [Petitioner] convicted of one count of Class A arson pursuant to either section 802(1)(A) or (1)(B)(2)." *State v. Bellavance*, 2013 ME 42, ¶ 18, 65 A.3d 1235.

Amendment rights were not violated."[3]  *Id.* ¶ 29.  Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.  (Petition at 3; Response, ECF No. 5 at 2.)

In June 2013, alleging claims of prosecutorial misconduct and ineffective assistance at trial and on appeal, Petitioner filed a petition in state court for post-conviction review. (*Bellavance v. State of Maine*, No. AUGSC-CR-2013-00523, Docket Record at 1, State Court Petition.)  Appointed counsel filed three amended petitions; in late 2014, counsel was permitted to withdraw, new counsel was appointed, and Petitioner filed a fourth amended petition pro se.  (Docket Record at 3.)

The post-conviction court held an evidentiary hearing in July 2016; following the hearing, the parties filed written memoranda, and in January 2017, the court denied the petition.  (*Bellavance*,  No.  AUGSC-CR-2013-00523,  Docket  Record  at  6; Post-conviction Tr. at 1; Decision (Jan. 30, 2017).)

In January 2018, the Law Court denied Petitioner's request for discretionary review, concluding: "After review of the record and [Petitioner's] memorandum, the Court has

---

[3] The Law Court explained:

> As a general rule, "[w]e do not consider claims of ineffective assistance of counsel on direct appeal; such claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition." *State v. Ali,* 2011 ME 122, ¶ 20, 32 A.3d 1019.  However, this principle does not apply to cases involving an alleged extrinsic interference with the right to counsel, as opposed to alleged attorney error or incompetence resulting in deprivation of the right to counsel.  *See State v. Brown,* 2000 ME 25, ¶¶ 17–19, 757 A.2d 768 (reviewing on direct appeal an appellant's argument that the trial court's denial of his motion to continue deprived him of his right to effective assistance of counsel).

*Bellavance*, 2013 ME 42, ¶ 22 n.5.

determined that no further hearing or other action is necessary to a fair disposition. It is therefore ORDERED that the request for a certificate of probable cause to proceed with the appeal is hereby DENIED." (*Bellavance v. State*, No. Ken-17-74, Order Denying Certificate of Probable Cause (Me. Jan. 18, 2018).)

Petitioner requests relief from the Law Court's decision on appeal and from its denial of a certificate of probable cause. Petitioner's *Strickland* claims are based on the issues raised in his memorandum in support of a certificate of probable cause. (Petition at 7-8.)

## II.    DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

On federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[4]

---

[4] Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

On the review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Because the Law Court determined that no further hearing or other action was needed on Petitioner's request for discretionary review, the final reasoned analysis of the state court, for purposes of federal review, is the post-conviction court's decision. (*Bellavance v. State*, No. AUGSC-CR-2013-00523, Decision (Jan. 30, 2017).) *See Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *Hittson v. Chatman,* 135 S. Ct. 2126 (2015) (Ginsburg, J., concurring in denial of certiorari).

When an external constraint, such as a restriction on a continuance, affects counsel's ability to provide effective assistance, the relevant Sixth Amendment standard, for purposes of section 2254(d), is set forth in *Morris v. Slappy*, 461 U.S. 1 (1983):

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, [376 U.S. 575, 589] (1964).

461 U.S. at 11-12 (citation omitted); *Bellavance*, 2013 ME 42, ¶ 22 n.5 (referring to "extrinsic interference with the right to counsel").

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. The Court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## B. Grounds Asserted and Analysis

### 1. Claim of extrinsic interference with right to counsel

In his section 2254 petition, Petitioner raises the Sixth Amendment issue addressed on direct appeal in *Bellavance*, 2013 ME 42, 65 A.3d 1235. (Petition at 5.) The claim is a consequence of the mid-trial decision of witness Thomas Mulkern to testify against Petitioner.

In an interview conducted by the State Fire Marshal's Office investigator in March 2010, Petitioner told investigators he was with Mulkern on the night of the fire. "[Petitioner] denied any involvement and maintained that on the night of the fire, he had spent time with Thomas Mulkern and Mulkern's girlfriend, gone to a local bar, visited an acquaintance's house, and slept at his daughter's house." *Bellavance*, 2013 ME 42 at ¶ 2. The investigator's summary of an April 2010 interview of Mulkern stated that Mulkern "admitted to spending time with [Petitioner] on the night of the fire but denied [the investigator's] accusations that Mulkern had assisted [Petitioner] in setting the fire, despite [the investigator's] advice that Mulkern should 'cut the best deal he possibly could.'" *Id.*

¶ 5.  The Law Court summarized the circumstances regarding Mulkern's trial testimony as

follows:

> The jury trial began on December 14.  On the evening of December
> 20, before the prosecution had rested its case, Mulkern approached the
> prosecution and offered to testify against Bellavance in exchange for
> immunity from prosecution.  Before trial on the morning of December 21,
> the prosecution disclosed to Bellavance and the court that it was prepared to
> grant immunity to Mulkern and that it expected him to testify that he had
> assisted Bellavance in carrying out the arson.
>
> After the prosecution disclosed Mulkern's anticipated testimony, the
> court asked why the prosecution had not granted Mulkern immunity before
> December 20, given that Mulkern's statement was "completely consistent"
> with the prosecution's theory of the case.  The prosecution responded that it
> had previously told Mulkern that it would not consider granting him
> immunity unless he told the truth, and that it did not consider Mulkern's
> previous denial of participation in the arson to be truthful.
>
> The transcript of the proceedings on the morning of December 21
> reveals that Bellavance's attorney had previously interviewed Mulkern, who
> made statements that corroborated parts of Bellavance's March 2010
> statement to [the investigator].  On December 9, 2011, however, Mulkern
> disclosed to Bellavance, through counsel, that Mulkern might be unwilling
> to testify for the defense and that his statement might in fact support the
> prosecution.  Then on December 12, Mulkern refused to speak with
> Bellavance's attorney.  It was not until December 20 that the prosecution
> learned of Mulkern's decision to testify against Bellavance.
>
> Following the December 21 inquiry into the circumstances of the
> immunity agreement, the court ordered that Bellavance have the opportunity
> to question Mulkern in the presence of Mulkern's attorney.  If Mulkern
> refused to submit to examination by Bellavance, the court would not permit
> Mulkern to testify.  To allow time for this examination, the court postponed
> further trial proceedings until December 23.

*Id.* ¶¶ 9-12.

In accordance with the applicable standard set forth in *Morris,* a Sixth Amendment

violation occurs only if the trial court responds to a reasonable request for a continuance

with an unreasoned and arbitrary denial.  *See Morris*, 461 U.S. at 11-12.  Here, the Law Court determined that the State did not violate  the governing procedural rule, Maine Rule of Criminal Procedure 16, as the State provided Petitioner's counsel with an audio recording of Mulkern's proffer; and that Petitioner and the trial court "carefully questioned the prosecution to ascertain why the agreement occurred at the eleventh hour," and "[t]his inquiry revealed no suggestion that the prosecution improperly withheld information regarding Mulkern's change in testimony." *Bellavance*, 2013 ME 42 at ¶ 26-29.  The Law Court concluded the prosecution had no duty to disclose prior, unaccepted offers of immunity. *Id. at ¶* 26.

Concerning Petitioner's opportunity to prepare for Mulkern's changed testimony, the Law Court noted the trial court suspended the trial for one day, "effectively providing [Petitioner] with forty-eight hours' notice of Mulkern's immunized testimony;"  Petitioner was "on notice, as of at least December 9, that Mulkern's testimony might in fact support the prosecution's case;"  and "the court facilitated [Petitioner's] preparation by ordering that [Petitioner] have the opportunity to question Mulkern before he testified, conditioning Mulkern's testimony on his availability to [Petitioner], and requiring that Mulkern be available to [Petitioner] for recall as a witness." *Id.* ¶ 27.  The Law Court also concluded Petitioner had not "established that he suffered sufficient prejudice to show that the court abused its discretion by not permitting him additional time to prepare for Mulkern's testimony." *Id.* ¶ 28.

A review of the record reveals that Petitioner has failed to meet his burden, pursuant to 28 U.S.C. § 2254(e)(1), to rebut the presumption of correctness of the facts set forth in

the Law Court's decision on appeal. Petitioner has not demonstrated the Law Court's decision was based on "an unreasonable determination of the facts," under section 2254(d)(2). To the contrary, the Law Court's reasoning is sound and is supported by the record. As the Law Court observed, the trial court afforded Petitioner sufficient time and opportunity to prepare for Mulkern's testimony. Because the trial court's decision was not unreasoned or arbitrary, Petitioner has failed to demonstrate the decision was contrary to or an unreasonable application of *Morris*. Petitioner's claim therefore fails under section 2254(d)(1).

### 2. *Strickland* claims

#### a. Preparation and ability of counsel

In Petitioner's post-conviction petition, he alleged a *Strickland*-based Sixth Amendment claim that neither counsel nor co-counsel was adequately prepared for trial, particularly for the Mulkern testimony, and that counsel could not hear well enough to provide effective assistance.[5] (Memorandum in Support of Certificate of Probable Cause

---

[5] The trial court noted Petitioner filed a motion to exclude Thomas Mulkern's testimony, and that "the defense strenuously objects to his testimony." (Trial Tr., Dec. 23, 2011, at 21.) The post-conviction court found "trial counsel diligently pursued his objections to the presentation of Mulkern as a witness under the circumstances and was effective in his preservation of the issue for presentation to the appellate tribunal." (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).)

Petitioner's post-conviction petition contained additional *Strickland* claims related to Mulkern's decision to testify for the State rather than for the defense; Petitioner alleged counsel failed to correct an alleged misrepresentation by the State, on appeal, concerning the date on which "Petitioner first learned that Mr. Mulkern would not be a favorable witness for him." (Memorandum in Support of Certificate of Probable Cause at 13.) Petitioner alleged: "In its [appellate] brief, the State argued that Petitioner's attorney was aware [that Mulkern would not provide favorable testimony] prior to jury selection, when in fact Mulkern's attorney told the Court during the trial that he first informed Petitioner's counsel of this fact after the jury had been selected." (*Id.*) The State said in its appellate brief: "While the Appellant hoped to have Mulkern testify in support of his defense, he was advised by Mulkern's counsel prior to jury selection that he should not call Mulkern as a witness because his testimony would be harmful." (*State v. Bellavance*, No. Ken-12-259, State's Appellate Brief at 20.) The Law Court noted: "On December 9, 2011, . . . Mulkern

10

at 10-12.) Petitioner contends prejudice should be presumed because both attorneys missed portions of the trial testimony, and co-counsel was not present for a significant portion of the trial.[6] (*Id.* at 11.)

The trial court was in fact concerned about trial counsel's ability to hear. At a bench conference during the State's direct examination of a witness on the third day of trial, the Court addressed Petitioner's counsel: "I don't know if you heard any of that because either

---

disclosed to [Petitioner], through counsel, that Mulkern might be unwilling to testify for the defense and that his statement might in fact support the prosecution." *Bellavance*, 2013 ME 42, ¶ 11. December 9, 2011, was the date on which the jury was selected. (*Bellavance*, No. AUGSC-CR-2010-00230, Docket Record at 8; Trial Tr., Dec. 21, 2011, at 16.) To the extent Petitioner's claim is based on his allegation that the communication occurred later than the date on which the jury was selected, the claim is not supported in the record, and Petitioner has not demonstrated either deficient performance or prejudice.

Petitioner also alleged counsel created a conflict of interest when counsel allegedly told Mulkern he did not need a lawyer, he should not speak to the prosecution, and he should plead the Fifth Amendment. (Memorandum in Support of Certificate of Probable Cause at 15-16.) The post-conviction court did not address the conflict-of-interest claim explicitly, but noted: "Other matters of complaint regarding the performance of defense trial counsel are not determinative of this court's conclusion and [therefore] are not discussed." (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) Petitioner's section 2254 claim fails because he has not demonstrated that counsel's alleged statements to Mulkern constituted deficient performance, or that counsel's statements caused Petitioner *Strickland* prejudice.

[6] Petitioner also alleged counsel was ineffective for the failure to use audiotape or videotape of an interview in counsel's cross-examination of a particular witness. (Memorandum in Support of Certificate of Probable Cause at 6.) At trial, counsel acknowledged the transcript of the taped interview was accurate, and although counsel asked the court to reserve ruling on the use of the tape, counsel cross-examined the witness using the transcript, and counsel did not subsequently request a court ruling on the use of the tape. (Trial Tr., Dec. 19, 2011, at 36-38, 51-52.) Petitioner also alleged counsel's closing was "extremely difficult to follow." (Memorandum in Support of Certificate of Probable Cause at 16.)

The post-conviction court's decision to deny relief without explicitly discussing either the issue concerning the taped interview or counsel's closing argument was not contrary to or an unreasonable application of *Strickland*, pursuant to section 2254(d)(1), and it was not based on an unreasonable interpretation of the facts, pursuant to section 2254(d)(2). Petitioner cannot demonstrate either deficient performance or prejudice on the issue of counsel's use of an accurate transcript to cross-examine. Petitioner's contention that counsel's closing argument was difficult to follow fails because the claim is unsupported by any specific allegations of deficient performance or prejudice. *See David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998) (noting "a habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible'") (quoting *Machiroda v. United States*, 368 U.S. 487, 495 (1962)).

you're not listening or you're not hearing, which remains a deep concern to the court, that you're not hearing everything that's going on."[7] (Trial Tr., Dec. 19, 2011, at 41-42.) The trial court took steps to address the issue, including the appointment of co-counsel for Petitioner. (*Id.* at 121-24; Docket Record at 10.)

The post-conviction court found both counsel and co-counsel were experienced in criminal defense and prosecution, and that both had experience with arson cases; the court found that co-counsel, who became involved on the third day of trial, and who interviewed Mulkern prior to his appearance at trial, was sufficiently prepared. (*Belavance*, No. AUGSC-CR-2013-00523, Decision (Jan. 30, 2017).) The court credited co-counsel's post-conviction testimony that she had reviewed the trial transcripts, which were made available through same-day reporting. (*Id.*) The court noted that counsel and Petitioner had both approved the addition of co-counsel to the case.[8] (*Id.*) The court found neither counsel's nor co-counsel's performance was deficient, and the court found Petitioner was not prejudiced.[9] (*Id.*)

Prejudice may be presumed if "[a]ctual or constructive denial of the assistance of counsel altogether" occurs. *Strickland*, 466 U.S. at 692. In Petitioner's case, however, the

---

[7] The trial court noted it was important Petitioner be able to talk with counsel during testimony, but it made it more difficult for counsel to hear the testimony. (Trial Tr., Dec. 23, 2011, at 19.) The post-conviction court also observed that the courtroom in which the trial was held may have been a factor. (*Belavance*, No. AUGSC-CR-2013-00523, Decision (Jan. 30, 2017).)

[8] At trial, in a chambers conference just prior to the start of Mulkern's testimony, the court ordered that co-counsel remain for the day, to take notes as Mulkern testified. (Trial Tr., Dec. 23, 2011, at 19-20.) At the conclusion of Mulkern's testimony, co-counsel informed the court that Petitioner requested she remain on the case. (*Id.* at 207.)

[9] The Law Court, addressing a different Sixth Amendment issue on direct appeal, evaluated prejudice to determine whether the trial court had abused its discretion when it did not permit Petitioner additional time

presumption does not apply, because the post-conviction court found Petitioner was not denied assistance of counsel, (*Belavance*, No. AUGSC-CR-2013-00523, Decision (Jan. 30, 2017)), and, as explained above, the decision is supported by the record. The trial court made specific findings regarding counsel's competence and preparation, and the findings are supported by the record. Petitioner has cited no reliable evidence to suggest that counsel's hearing challenges adversely impacted counsel's ability to provide effective assistance, or that counsel was unprepared. The appointment of co-counsel was a sensible way to address any potential issues presented by any hearing difficulty counsel might have had. Petitioner has thus failed to demonstrate that the state court decision was either contrary to or an unreasonable application of *Strickland*, pursuant to section 2254(d)(1), or that the decision was based on an unreasonable determination of the facts, under section 2254(d)(2).

### b.  Evidence of incarceration and assault on inmate

In Petitioner's state court post-conviction petition, he claimed ineffective assistance based on counsel's failure to object to evidence that Petitioner was incarcerated before trial on the arson charges, and that he had also been incarcerated on prior convictions; counsel's failure to object to the State's closing argument, which Petitioner argued included reference to his incarceration as improper character evidence; and counsel's failure to request a jury

---

to prepare for Mulkern's testimony.  *Bellavance*, 2013 ME 42, ¶ 28.  It is noteworthy, however, that the Law Court concluded Petitioner had not identified any "actual prejudice."  *Id.*

instruction regarding Petitioner's incarceration.[10]  (Memorandum in Support of Certificate of Probable Cause at 3-6.)

Petitioner's claim concerns, in part, evidence of an assault Petitioner committed on another inmate while in pre-trial detention.  (*Id.*)   Petitioner argued the State should have produced, and counsel should have obtained and offered in evidence, a video introduced in the post-conviction hearing, which video captured the moments before the assault. Petitioner maintained that if the video had been produced before trial and shown to the jury, the video would have supported his trial testimony that he assaulted the other inmate because the inmate spat at Petitioner, rather than because the inmate had informed on Petitioner as argued by the State.  (*Id.* at 7; Trial Tr., Dec. 29, 2011, at 184-86.)

The post-conviction court found that at trial, the State introduced testimonial evidence of the jail assault "to show consciousness of guilt on the part of [Petitioner] who believed the other prisoner had 'ratted' on him regarding comments [Petitioner] had made in the form of confession." (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).)  At trial, the officer who observed and intervened to stop the assault, and who escorted Petitioner to booking, testified that Petitioner said: "'It's nothing against you guys, he ratted me out,' . . . ." (Trial Tr., Dec. 20, 2011, at 104.)  Petitioner testified at trial and admitted on cross-examination the officer's testimony was accurate. (Trial Tr.,

---

[10] At trial, Petitioner testified he had been incarcerated on prior convictions; on direct examination, he testified that when he was first interviewed in March 2010 concerning the incident that led to the arson charges, he was incarcerated for the failure to pay fines.  (Trial Tr., Dec. 29, 2011, at 48, 50.) On cross-examination, Petitioner testified he had been convicted in 2008 of a felony drug possession offense.  (*Id.* at 54.)  The court excluded evidence of a prior aggravated assault conviction.  (*Id.* at 8-9.)

Dec. 29, 2011, at 159.) In closing argument, the prosecutor told the jury that "[Petitioner] is a volatile man. He's quick to anger and when he is angry he's quick to act." (Trial Tr., Dec. 30, 2011, at 11.)

At trial, before the State called the inmate to testify to Petitioner's assault, Petitioner's counsel informed the court that counsel did not intend to object to evidence of prior incarceration, or particularly, evidence of the jail assault. (Trial Tr., Dec. 19, 2011, at 294-97; Trial Tr., Dec. 20, 2011, at 16-19.) Counsel acknowledged that evidence of Petitioner's incarceration would be admissible if Petitioner testified. (Trial Tr., Dec. 19, 2011, at 296.) Counsel told the court he planned to address such issues on cross-examination, and he planned to request a relevant jury instruction; the court anticipated it would instruct that evidence of incarceration "is to be given no weight in deciding whether the State has met its burden of proof . . . ." (Trial Tr., Dec. 20, 2011, at 16-19.)

Counsel testified in the post-conviction hearing that he did not request a jury instruction concerning Petitioner's incarceration because he did not think to request it when jury instructions were being addressed: "[I]t just didn't occur to me." (Post-conviction Tr. at 60-61.) Counsel added that he thought the lack of a jury instruction on Petitioner's incarceration was reasonable; that an instruction "that someone is in jail should not be taken against them would have also undermined attempts to impeach the credibility of other witnesses who had been in jail probably" (*id.*); that "[w]hen every witness has been in jail practically [a defendant's incarceration] becomes somewhat immaterial", and "[i]n this case [al]most every witness had been in jail" (*id.* at 57-58); and that Petitioner's

incarceration was apparent from much of the testimony in the case, including that of one witness in particular (*id.* at 58-59).[11]

The post-conviction court found that counsel's failure to request a jury instruction concerning Petitioner's incarceration was "reasonable in light of all the evidence before the jury." (*Belavance*, No. AUGSC-CR-2013-00523, Decision (Jan. 30, 2017).) The court reasoned that after the trial court denied Petitioner's motion to exclude Mulkern's testimony, the defense "needed to attack Mulkern's credibility," and because Petitioner and Mulkern were acquainted with each other though prison, "[t]rial strategy called for the consideration by the jury of prisoners 'ratting' on each other." (*Id.*; Trial Tr., Dec. 23, 2011, at 21, 25.)

Petitioner has failed to demonstrate that the state court's denial of Petitioner's ineffective assistance claim concerning counsel's failure to object to evidence of Petitioner's incarceration, and counsel's failure to object to the prosecutor's closing argument, were either contrary to or an unreasonable application of *Strickland*, pursuant to section 2254(d)(1), or that the decision was based on an unreasonable determination of the facts, under section 2254(d)(2). Given that the jail officer's testimony regarding Petitioner's statement following the assault was plainly relevant and admissible, the jury would necessarily learn of Petitioner's incarceration. The State did not suggest Petitioner's incarceration was evidence of his guilt. While the court might have instructed the jury

---

[11] At trial, the referenced witness responded affirmatively, on direct examination by counsel, when asked whether she had "talked to [Petitioner] on the phone in the jail." (Post-conviction Tr. at 58-59; Trial Tr., Dec. 27, 2011, at 357.)

regarding the incarceration if counsel had asked, given counsel's efforts to discredit Mulkern's testimony in part due to his status as an inmate, the decision not to request an instruction does not constitute substandard performance under *Strickland*.

Furthermore, Petitioner has not demonstrated prejudice. As the post-conviction court noted, the evidence was "overwhelming," and a review of the totality of the evidence supports that determination. (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) *See Morgan v. Dickhaut*, 677 F.3d 39, 48 (1st Cir. 2012) ("Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to 'the totality of the evidence' in evaluating the state court's decision") (citation omitted); *Kirwan v. Spencer*, 631 F.3d 582, 591 (1st Cir. 2011) ("Given that the other evidence against him was overwhelming, . . . Kirwan cannot demonstrate that there is a 'reasonable probability' that the result of his trial would have been different if his attorney had objected to, or sought curative instructions regarding, the prosecutor's statements" in closing argument); *Sheard v. Klee*, 692 F. App'x 780, 783-84 (6th Cir. 2017) (concluding that due to the "overwhelming weight" of the evidence against the petitioner, he could not demonstrate prejudice from the prosecutor's misconduct, despite deficient performance of counsel) (quotation marks omitted). The record lacks any credible evidence to suggest a reasonable probability that a jury instruction would have generated a different result.

Petitioner's ineffective assistance claim based on the video evidence also fails. The record reflects that three videos of the jail assault were discussed during either the trial or post-conviction proceedings. The first video, *i.e.*, the video at issue at trial, showed

Petitioner's assault on the inmate.[12]  The second video, which was introduced in evidence

at the post-conviction hearing, showed both the assault and the moments beforehand.[13]

---

[12] The video at issue at trial is referred to in this recommended decision as the "first" video.  (As explained below, neither the first video, nor any other video, was introduced in evidence at trial or shown to the jury.) A video introduced and shown in the post-conviction hearing is referred to here, and occasionally in the record, as the "second" video.  A video that Petitioner, in his post-conviction testimony, alleged was extant at the time of trial but missing at the time of the post-conviction proceeding is referred to here, and occasionally in the record, as the "third" video.

At trial, the State did not attempt to introduce either the first video or testimony about it in the State's case-in-chief; rather, the State called an officer who testified that he observed Petitioner's assault on the fellow inmate, that he intervened to stop it, and that he escorted Petitioner to booking after the assault. (Trial Tr., Dec. 20, 2011, at 98-104.)

Counsel testified in the post-conviction hearing that the first video "didn't show much." (Post-conviction Tr. at 63.)  At trial, counsel called, as the first defense witness, an officer who testified that he was present at the jail on the day of the assault, but that he did not observe the assault; the officer testified he drafted a report about the incident, and he reviewed video of the assault.  (Trial Tr., Dec. 27, 2011, at 20-23, 33-34.)  Counsel attempted to use the first video to refresh the officer's recollection.  (*Id.* at 24-26.)  Counsel commented about time pressure after the court refused to pause to await setup of the video.  (*Id.* at 26.)

Counsel objected to questions on cross-examination concerning what the first video showed; evidently, the ground for the objection was that the video itself was the best evidence.  (*Id.* at 31.)  The court overruled the objection.  (*Id.*)  Evidently, the officer reviewed two videos from two different cameras: "There's two cameras, . . . I reviewed both of them yesterday."  (*Id.* at 30-31.)  The officer further testified:

>  Q.    Okay.  What you do know is that Mr. Bellavance came out of a cell at the head of the stairs?
>
>  A.    Yes.
>
>  Q.    And attacked [the fellow inmate]; is that accurate?
>
>  A.    Yes.
>
>  Q.    Did you see any indication that [the fellow inmate] made any aggressive move toward Mr. Bellavance?
>
>  A.    No.

(*Id.* at 32-33.)  Counsel elicited from the officer who witnessed the assault, and from the officer who reviewed the video, that neither officer observed Petitioner or the fellow inmate in the moments before the assault.  (Trial Tr., Dec. 20, 2011, at 105-06, 110; Trial Tr., Dec. 27, 2011, at 33-34.)

On cross-examination of Petitioner at trial, Petitioner testified he had not seen video of the jail assault, but he did not contest that he struck the fellow inmate.  (Trial Tr., Dec. 29, 2011, at 158-59, 188.)

(Memorandum in Support of Certificate of Probable Cause at 7; Post-conviction Tr. at 69, 153, 200-02.) Petitioner argued that if the jury had seen the second video, there was a reasonable probability the jury would have credited Petitioner's testimony that he assaulted the inmate because the inmate spat at him; that the jury would not have concluded the assault was evidence of consciousness that he was guilty of arson; and that the jury would have credited Petitioner's other testimony concerning the charges.[14] (Memorandum in

---

In the post-conviction hearing, the prosecutor testified the video available at trial was not shown or introduced in evidence, and he was not aware at trial that there existed video footage from the moments before the assault. (Post-conviction Tr. at 200-02.)

[13] In the post-conviction hearing, counsel testified that several months after the arson trial, during Petitioner's trial on the jail assault charges, "an officer came in and disclosed a second video, which had not been disclosed at the time of the arson trial." (Post-conviction Tr. at 64.) The second video was shown and admitted in the post-conviction hearing. (*Id.* at 69, 153.) The prosecutor testified it showed the jail assault "from a different angle. You can see a little more of what happened before." (Post-conviction Tr. at 201-02.)

Post-conviction counsel represented to the court the second video was consistent with Petitioner's trial testimony that the inmate spat at Petitioner, because the video showed that the inmate turned around and went back to Petitioner's cell. (Post-conviction Tr. at 69-71; Trial Tr., Dec. 29, 2011, at 184-86.) Although Petitioner argued in his memorandum in support of a certificate of probable cause that the video showed the inmate "walking by [Petitioner's] cell and then going back towards his cell apparently spitting on [Petitioner] before [Petitioner] struck him" (Memorandum in Support of Certificate of Probable Cause at 7), the record of the post-conviction hearing established that one could not actually see on the video that the inmate spat at Petitioner. (Post-conviction Tr. at 69-71.)

[14] Petitioner also alleged the State's failure to disclose the second video before trial demonstrates that the State deliberately withheld the second video from the defense, and that the State knowingly relied at trial on inaccurate testimony from both the inmate and the officer who observed and intervened to stop the assault. (Memorandum in Support of Certificate of Probable Cause at 8-9.) Petitioner alleged ineffective assistance for counsel's failure to seek a new trial on the arson charges after, as Petitioner alleges, the officer was confronted, in the course of the jail assault prosecution, with inconsistent testimony from the arson trial. (*Id.* at 9.) Petitioner cannot demonstrate he is entitled to section 2254(d) relief on prosecutorial misconduct and ineffective assistance claims that are based on alleged inconsistencies between the officer's testimony and the second video, given that on cross-examination in the arson trial, counsel elicited from the officer that he did not observe Petitioner's fellow inmate in the moments before the assault. (Trial Tr., Dec. 20, 2011, at 105.)

Petitioner also alleged there might have been a third video; specifically, Petitioner alleged the prosecutor's testimony in the post-conviction hearing may have revealed a *Brady* violation, *see Brady v.*

Support of Certificate of Probable Cause at 7-8; Post-conviction Tr. at 70; Trial Tr., Dec. 29, 2011, at 184-86.)

Petitioner cannot demonstrate he is entitled to relief under section 2254(d) from the state court's post-conviction determination that Petitioner failed to demonstrate ineffective assistance for counsel's failure to obtain and introduce the second video at trial.[15] (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) Not insignificantly, neither party was aware at trial of the video introduced at the post-conviction hearing. (Post-conviction Tr. at 63-66, 69, 200-02, 235-36.) In addition, there is no evidence that would support a determination that counsel should have been aware of the video, or that the video would have produced a different result.

### c. Defense fire expert and State fire investigator

In his post-conviction petition, Petitioner asserted claims concerning both the defense fire expert and the State's fire investigator. As to the defense fire expert, Petitioner

---

*Maryland*, 373 U.S. 83 (1962), for the failure to disclose before or during the trial a video that was missing at the time of the post-conviction hearing. (Memorandum in Support of Certificate of Probable Cause at 7-8.) The prosecutor did not testify there had existed any such third video, and post-conviction counsel's questioning of the prosecutor concerned primarily the second video, *i.e.*, the video that was introduced and shown at the post-conviction hearing. (*Id.* at 7; Post-conviction Tr. at 236-39.) The post-conviction court did not explicitly discuss the *Brady* claim concerning the alleged third video. (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision (Jan. 30, 2017).) To the extent Petitioner's section 2254 petition challenges the state court's denial of relief for an alleged *Brady* violation concerning the third video, Petitioner has failed to demonstrate the existence of a third video or that the record otherwise supports relief under section 2254(d).

[15] Even if the second video, or testimony as to what it showed, had been offered in evidence at trial, the evidence would not have negated the evidence of Petitioner's statement to the officer, directly after the assault, that the inmate had informed on Petitioner. (Trial Tr., Dec. 20, 2011, at 104; Dec. 29, 2011, at 158-59.) Petitioner's statement to the officer was compelling evidence of motivation for the assault and consciousness of guilt on the arson charges, regardless of whether Petitioner may have had an additional motivation after, as Petitioner alleged, the inmate spat at him.

alleged ineffective assistance because counsel failed to call the expert to testify at trial. (Memorandum in Support of Certificate of Probable Cause at 13-14.) Petitioner argued the defense expert would have testified that the State's evidence was insufficient to establish the onset of the fire. (*Id.* at 13.) Petitioner maintained the testimony was important to establish an alibi. (*Id.*) Petitioner asserted the defense expert also would have testified that the State mishandled evidence at the scene. (*Id.* at 14.) Petitioner alleged counsel's investigation of bandana, a beer can, and a gas can was inadequate, and counsel's unsuccessful attempt to introduce evidence regarding the flammable properties of a gas can through the testimony of a private investigator who was not a fire expert constituted ineffective assistance. (*Id.* at 14-15.)

Counsel testified at the post-conviction hearing that after the defense expert heard the trial testimony of the State's fire investigator, the defense expert informed counsel he had no basis on which to challenge the investigator's testimony, including the testimony concerning the timing of the fire. (Post-conviction Tr. at 37.) The post-conviction court found no ineffective assistance concerning counsel's decision not to call the defense expert to testify. (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).)

The post-conviction court also found counsel was aware the fire department record was incorrect, but counsel concluded the fire start time was accurately established. (*Id.*) Regarding the allegedly mishandled evidence, counsel acknowledged in his post-conviction testimony he had "no doubt" some of the evidence, specifically, a gas can, had been mishandled, as reported by the defense expert, but counsel concluded he did not want to move to exclude the gas can, because the evidence could be helpful in that

Petitioner's DNA was not found on the gas can. (Post-conviction Tr. at 29-34.) The post-conviction court concluded Petitioner's allegations of mishandled evidence were "of little consequence to the evidence at the trial or counsel's conduct regarding it." (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).)

Counsel's reasoning is sound, and the post-conviction court's assessment is supportable. The challenged decisions of counsel are the product of acceptable judgment of trial counsel. Petitioner has thus failed to demonstrate the state court's decision to deny relief on Petitioner's *Strickland* claims related to the defense fire expert was contrary to or an unreasonable application of *Strickland*, pursuant to section 2254(d)(1), or that the decision was based on an unreasonable determination of the facts, under section 2254(d)(2).

Petitioner also alleged prosecutorial misconduct and ineffective assistance concerning the state fire investigator's testimony. (Memorandum in Support of Certificate of Probable Cause at 15.) Petitioner maintained counsel failed to understand all of the investigator's testimony. (*Id.* at 14.) Petitioner contends the State should have known that some of the investigator's testimony was false, "particularly around [the investigator's] interview of witnesses and feeding them information," and counsel should have raised the issue. (*Id.* at 15.)

The post-conviction court found that at trial, "[Petitioner] wanted counsel to offer the recording [of the fire investigator's interview of Mulkern] into evidence to imply that Mulkern's testimony was a story supplied to him by the investigator." (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) At trial, counsel asked the fire

investigator on cross-examination whether he suggested answers to witnesses; the fire investigator denied doing so. (Trial Tr., Dec. 21, 2011, at 237-38.) On the claim of prosecutorial misconduct, the prosecutor testified in the post-conviction hearing he did not believe the fire investigator had suggested answers to Mulkern in the interview. (Post-conviction Tr. at 221-24.)

The post-conviction court found counsel's decision not to attempt to introduce the recording of the Mulkern interview was reasonable because "the recording was consistent with trial testimony, was of questionable admissibility and an implication could also be negative to the defense."[16] *Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) The court's assessment of the Mulkern testimony and the state of the evidence is supported by the record. Petitioner, therefore, has failed to demonstrate that counsel, who cross-examined the investigator on the issue Petitioner contends counsel failed to challenge, provided ineffective assistance, or that the prosecutor committed misconduct.

### d. Veracity of witnesses

Petitioner alleged counsel's failure to challenge the State's comments in closing argument about the veracity of the State's witnesses constituted ineffective assistance. (Memorandum in Support of Certificate of Probable Cause at 6 (citing Trial Tr., Dec. 30, 2011, at 38, 46).) Petitioner cited the prosecutor's argument concerning

---

[16] Mulkern admitted on cross-examination at trial that he had lied in pretrial statements to the fire investigator when Mulkern told the investigator he went to Portland on the evening at issue. (Trial Tr., Dec. 23, 2011, at 105-07.)

Mulkern's immunity and his veracity: "[Mulkern] doesn't have to worry about being prosecuted for this. But that that doesn't mean – actually what that means is he is telling the truth because he's telling you about what he did." (*Id.* (citing Trial Tr., Dec. 30, 2011, at 38).) Petitioner also cited the prosecutor's assertion to the jury: "When you go back in the jury room, you're going to consider the evidence that you've heard, you're going to apply your common sense and that you will arrive at the right verdict. And the state asks you that you return verdicts of guilty." (*Id.* (citing Trial Tr., Dec. 30, 2011, at 46-47).)

The post-conviction court did not address the issue explicitly, but it noted that the claims not discussed in the decision were not determinative of the court's conclusion. (*Bellavance*, No. AUGSC-CR-2013-00523 (Decision, Jan. 30, 2017).) The post-conviction court reviewed the totality of the evidence and concluded, based on a number of specific findings, that the evidence supporting the verdict was "overwhelming." (*Id.*)

The totality of the evidence in support of the verdict was, as the post-conviction court noted, "overwhelming." As to Petitioner's specific challenge to the prosecutor's closing remarks to the jury concerning Mulkern, the post-conviction court's implicit finding that the claim lacks merit is reasonable. The prosecutor cited evidence in support of the State's contention regarding Mulkern's credibility, which argument is permissible. The prosecutor did not personally attest to the veracity of the witness. Petitioner's claim, therefore, is without merit.

In sum, Petitioner has not demonstrated that the state court decision to deny Petitioner's claims concerning the prosecutor's closing argument was contrary to or an unreasonable application of *Strickland*, pursuant to section 2254(d)(1), or that the denial of

relief was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2). *See Kirwan*, 631 F.3d at 591.

### III.    CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases.  I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

<u>/s/</u> John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of January, 2019.